## LOUISVILLE & NASHVILLE RAILROAD CO., Plaintiff,

v.

## KENTUCKY UTILITIES CO., Defendant.

### Civ. A. No. C81–0092 L(s).

United States District Court,
W. D. Kentucky,
Louisville Division.

March 29, 1982.

---

William D. Grubbs and John P. Sandidge, Woodward, Hobson & Fulton, Louisville, Ky., for plaintiff.

Malcolm Y. Marshall and Stephen E. Embry, Ogden, Robertson & Marshall, Louisville, Ky., and C. Michael Loftus, Slover & Loftus, Washington, D. C., for defendant.

## MEMORANDUM

SILER, District Judge.

This matter is before the Court on cross motions for summary judgment. The plaintiff, Louisville and Nashville Railroad Co. (L&N), instituted this action to collect from the defendant, Kentucky Utilities Co. (KU), amounts due L&N pursuant to newly enacted tariffs on file with the Interstate Commerce Commission (ICC). KU has refused to pay the rates set out in the tariffs on file with the ICC, insisting that it only has to pay the rate previously set by the Kentucky Railroad Commission (KRC).

■ The parties are in agreement that there are no disputed issues of material fact in this proceeding. The L&N seeks to collect certain amounts it claims for rail transportation between Hoyt, Kentucky, and Cleancoal, Kentucky. KU does not dispute that L&N provided the rail transportation services or that it is required to pay the lawful freight rates for such services. The dispute between the parties is solely over the amount of the rate during the period at issue. L&N maintains that the rate is $4.69 per net ton, the tariff on file with the ICC, and KU argues that the rate is $3.98 per net ton, the tariff enacted by the KRC. The difference between the two amounts is attributable to the parties' disagreement on the effect of the enactment of the Staggers Rail Act of 1980, 49 U.S.C. § 10101, *et seq.* (1982), and particularly § 214(b)(6) of the Act, 49 U.S.C. § 11501(b)(6). Because the Court believes that when Congress enacted § 214(b)(6) it wholly preempted state regulation of tariff rates, the amount of the tariff is $4.69 per net ton for the services the L&N provided KU. Accordingly, an Order overruling the defendant's motion for summary judgment and sustaining the plaintiff's motion will accompany this Memorandum.

On October 1, 1980, Congress enacted the Staggers Rail Act to assist the nations railroads in rehabilitating the rail system and to offset the industry's inadequate rate of return on investment. *See generally* 49 U.S.C. § 10101a. As part of the Staggers Rail Act, under Section 214(b)(6), Congress preempted state authority to establish general rate increases for commerce traveling wholly intrastate. It is undisputed that the rate increases at issue are "general rate increases" subject to Section 214(b)(6), 49 U.S.C. § 11501(b)(6); and it is likewise undisputed that Congress was authorized under the Interstate Commerce Clause to enact Section 214(b)(6). *See Houston East & West Texas Railway Co. v. United States (The Shreveport Rate Case),* 234 U.S. 342, 34 S.Ct. 833, 58 L.Ed. 1341 (1914) (congressional authority to regulate interstate rail carriers held necessarily to embrace the authority to regulate the instruments of intrastate commerce).

On November 23, 1980, pursuant to Section 214(b)(6), the L&N was granted authority from the ICC to charge tariff increases for intrastate rail traffic. The L&N seeks to collect tariff increases from and after November 23, 1980; it does not seek to apply these increases to KU coal movements that took place prior to November 23, nor does it seek to apply these increases to collect "undercharges" from KU. The parties agree that KU's coal movements from Hoyt to Cleancoal occurred after November 23, and are facially subject to the tariff increase. KU, however, claims that the L&N seeks unlawfully to apply the Staggers Rail Act retroactively to reach the coal movements as issue. L&N responds that the tariffs at issue apply prospectively, and not retroactively.

Both parties evidence some misunderstanding of the application of the terms prospectivity and retroactivity. Retroactivity pertains to the application of statutory or common law prior to the date of enactment or the date of decision. Application of Section 214(b)(6) of the Staggers Rail Act (not the tariff increase itself, as the plaintiff argues) to subject events (intrastate rail traffic) prior to October 1, 1980, constitutes retroactive application. Nonretroactivity or prospectivity pertains to the application of statutory or common law subsequent to the date or enactment or the date of decision. Application of Section 214(b)(6) only to intrastate coal movements on or subsequent to October 1, 1980, constitutes prospective application. The subject matter of this preemption statute is not the monetary difference between concurrent state and federal rates, but the authority to whom rate-making power is vested. Hence, retroactive application pertains neither to the date this dispute arose (as L&N argues) nor to the date of enactment of the preempted state tariff (as KU argues), but to the date that federal regulatory jurisdiction preempted state regulatory jurisdiction, October 1, 1980. Since these rates were enacted subsequent to October 1, there is no retroactive application of the Staggers Rail Act.

In drafting the foregoing discussion, the Court acknowledges KU's contention that the Sixth Circuit's recent decisions in *Cleveland Cliffs Iron Co. v. ICC*, 664 F.2d 568 (6th Cir. 1981), and *Hanna Mining Co. v. Escanaba and Lake Superior Railroad Co.*, 664 F.2d 594 (6th Cir. 1981), indicate that the Staggers Rail Act is not to be given retroactive effect. The Court agrees with the defendant's analysis of these cases, but concurs with the plaintiff in finding them distinguishable from the present controversy. In *Hanna Mining, supra* at 599, the ICC and the defendant-railroad urged the Court to decide the appeal on the basis of pre-Staggers Rail Act law. In following the parties' urging, the court adopted its lengthy discussion in *Cleveland Cliffs, supra*, on the question of applying the Staggers Rail Act to market dominance cases either pending before the ICC or on appeal on the date the new statute came into effect. *Hanna Mining, supra* at 600. The Sixth Circuit in *Cleveland Cliffs, supra* at 589, ruled that rail rate disputes that were pending before the ICC or the courts prior to October 1, 1980, are governed by pre-Act law.

The subject matter at issue in both of these two cases was the basis for a determination of a rail carrier's market dominance. Retroactive application of the Act in these cases pertains to the date the dispute arose because, on that date, the challenging party filed his action upon his assessment of the then current regulatory law. In other words, the instant controversy is distinguishable from *Cleveland Cliffs* and *Hanna Mining* because the specific statutory provisions to be given prospective effect are concerned with different issues: jurisdictional authority as opposed to substantive decisional criteria. With respect to provisions in the Act pertaining to regulatory authority, the date of statutory enactment (the date the governmental authority is empowered) measures prospective application. With respect to provisions in the Act pertaining to substantive decisional criteria, the date the dispute arose (the date of the complaining party's reliance on regulatory law) measure prospective application of the Act.

■ Having concluded that a declaration of general rate increases enacted after October 1, 1980, to be valid accords only prospective effect to Section 214(b)(6) of the Staggers Rail Act, 49 U.S.C. § 11501(b)(6), the language of the statute itself refutes the defendant's other two major contentions. Contrary to the defendant's assertion, there is no requirement under Section 214(e), 49 U.S.C. § 11501(e), that the ICC hold a full hearing prior to institution of these intrastate general rate increases. The term "action" in Section 214(e) obviously refers to those portions of the statute pertaining to the issuance of formal orders *prescribing* a rail rate, after the ICC finds the existing state rates to be discriminatory or burdensome on interstate commerce. *See* Section 214(a), 49 U.S.C. § 11501(a). The term does not apply merely to *enforcing* the previously authorized and approved general rate increases. No purpose would be served by reading the statute to require two separate hearings on the same general issue. As a preemption statute, Section 214(b)(6), 49 U.S.C. § 11501(b)(6), acts of its own force; nothing in the statute, as amended, suggests that a hearing is necessary to bring otherwise disproportionately low intrastate tariffs in line with the previously established lawful rate. *Colorado Intrastate Freight Rates and Charges—1980*, I.C.C. Dec. No. 37,471, slip op. at 5 (Aug. 6, 1981).

■ Likewise, there is nothing in the statute to suggest that rail carriers must comply with state filing requirements to enforce prescribed intrastate tariff increases subsequent to October 1, 1980. Section 214(b)(6), 49 U.S.C. § 11501(b)(6), is explicit: the statute wholly preempts state regulatory authority to prescribe certain interstate and intrastate rate increases. Since the ICC has the exclusive duty to establish general rate increases, Kentucky has the correlative duty not to interfere with the agency's exercise of its mandate. The statute wholly preempts inconsistent Kentucky law defining filing procedure, since Ken-

tucky no longer has jurisdiction to establish certain intrastate tariff increases. Hence, L&N may require payment under the two intrastate tariff increases on file with the ICC, regardless of whether the tariff increases were filed pursuant to state law.

Finally, the defendant seeks to avoid payment of the higher tariff for its coal shipments by arguing that the controversy is moot. On September 10, 1981, and on October 14, 1981, the KRC prescribed rates applicable to the Hoyt to Cleancoal coal shipments in excess of the rates previously prescribed by the ICC. Since these rates came into effect on July 7, 1981, subsequent to the ICC increase on November 23, 1980, this controversy is not moot as to those coal shipments occurring between November 23, 1980, and July 7, 1981. The defendant's mootness argument is without merit.